UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SUSAN SAMPEL, | * | |
| Plaintiff, | * | |
| v. | * | |
| WHOLE FOODS MARKET GROUP, INC., AA CLEANING COMPANY INC., and ARD CLEANING, INC., | * | |
| Defendants, | * | |
| WHOLE FOODS MARKET GROUP, INC., | * | Civil Action No. 18-cv-11752-ADB |
| Cross Claimant, | * | |
| v. | * | |
| AA CLEANING COMPANY, INC. and ARD CLEANING, INC., | * | |
| Cross Defendants. | * | |

**MEMORANDUM AND ORDER ON DEFEDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF-IN-CROSSCLAIM'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

BURROUGHS, D.J.

Susan Sampel ("Sampel") filed the instant complaint against Whole Foods Market Group, Inc. ("Whole Foods") after she slipped and fell at a Whole Foods store in Hyannis, Massachusetts ("the Store") on August 12, 2015.  [ECF No. 1-1 at 4].  Sampel later added AA Cleaning Company, Inc. ("AA Cleaning") and ARD Cleaning Inc. ("ARD") as co-defendants.  [ECF No. 20-1; ECF No. 42-1].  Sampel alleges that her injuries were a result of negligence from

all three co-defendants.  See generally [ECF No. 44].  Whole Foods subsequently filed a crossclaim against AA Cleaning.  [ECF No. 39].

Currently before the Court is a joint motion from AA Cleaning and ARD for summary judgment, [ECF No. 79], on all of the claims brought against them in Sampel's third amended complaint, [ECF No. 44].[1]  Also before the Court is Whole Foods' motion for partial summary judgment, [ECF No. 76], on three of the five claims brought in its crossclaim, [ECF No. 36], against AA Cleaning.  Whole Foods seeks a declaratory judgment that AA Cleaning has a duty to defend and indemnify Whole Foods in the underlying tort action as well as summary judgment on its claims for contractual indemnity and breach of contract.  [ECF No. 76 ¶¶ 10, 11].

For the reasons set forth below, AA Cleaning and ARD's motion for summary judgment as against Sampel, [ECF No. 79], is GRANTED, and Whole Foods' motion for partial summary judgment as against AA Cleaning, [ECF No. 76], is DENIED.

## I.    BACKGROUND

### A.    Factual Background

Sampel claims that she slipped and fell on a puddle of water near the registers at the Store on August 12, 2015, [ECF No. 1-1 ¶ 3–6; ECF No. 85-2 at ¶ 2], and had medical expenses and lost wages that totaled $97,757.17, [ECF No. 76-10 at 8].  According to Sampel's interrogatory responses, on August 12, 2015, Whole Foods employees were giving bags of ice to customers in the register area to keep perishable products cold.  [ECF No. 76-10 at 3].  The Store's manager, Michael Sousa ("Sousa"), states that handing out ice bags to customers is a Whole Foods practice, and Whole Foods employees are responsible for individually bagging and packaging

---

[1] For sake of brevity, this Order will refer to AA Cleaning and ARD collectively as, ("AA Cleaning"), when discussing their joint motion for summary judgment.

the ice in coolers to give to customers.  [ECF No. 86-5 at 11].  Before Sampel fell, she and her friend reportedly saw a child drop a bag of ice, which caused the puddle, and a Whole Foods employee, Sonya Grewel ("Grewel"), attempt to clean up the spill.  [Id.].  After Sampel fell, Grewel apologized to Sampel and her friend, stating that she had mistakenly believed that she had cleaned up the entire puddle.  [Id.].

Whole Foods employees are instructed to clean up a spill themselves, should they be present when it happens, [ECF No. 86-5 at 6–7], though they may page AA Cleaning to assist with the cleanup, so long as they do not leave the spill unattended, [id. at 6].  The Store has an electronic system for tracking cleaning activity called "Gleason Logs."  [ECF No. 76-6 at 18].  Per Whole Foods' instructions, the Gleason Log only records services performed by a contracted cleaning service, not Whole Foods employees.  [Id.].  According to Sousa, if a spill had been cleaned up by an AA Cleaning employee, it would have been reflected in the Gleason Log.  [ECF No. 76-6 at 18–19].  The Gleason Log for the day Sampel fell only reports four spills, all of which occurred and were cleaned up after her fall.  [ECF No. 76-8 at 7–9; ECF No. 85-2 ¶ 13].

At the time of Sampel's alleged injury, Whole Foods had entered into a contract with AA Cleaning ("the Agreement"), [ECF No. 76 ¶ 2], which required AA Cleaning to "perform certain cleaning and maintenance services at [the Store]," [id.].  According to deposition testimony from Whole Foods Regional Manager Daniel Sullivan ("Sullivan"), well before Sampel's injury, in March 2014, Sullivan had contacted AA Cleaning on behalf of Whole Foods and requested its cleaning services.  [ECF No. 76-1 at 4].  Whole Foods and AA Cleaning ultimately entered into the Agreement on April 1, 2015, [ECF No. 86-4 at 1], but even before that AA Cleaning had been providing cleaning services pursuant to an informal understanding.    [ECF No. 76-1 at 11].

Sullivan testified that, during that time, AA Cleaning was "doing [Whole Foods] a favor." [Id.]. According to Sullivan's deposition, he was willing to have this informal arrangement because AA Cleaning was already providing cleaning services at another Whole Foods location in Connecticut and had been performing satisfactory work. [Id. at 7–8].

After Whole Foods reached out to AA Cleaning in March 2014, but before the parties executed the Agreement, AA Cleaning subcontracted the cleaning services out to a third-party company, ARD, without notifying Whole Foods. [ECF No. 76-2 at 14]. The agreement between AA Cleaning and ARD, ("the Subcontract"), was executed on January 18, 2015. [ECF No. 76-5].

For this case, the two most relevant provisions in the Agreement are the subcontracting clause—Section 7(e)—and the indemnification clause—section 5(b). [ECF No. 86-4 at 2–3, 4]. The subcontracting clause forbids AA Cleaning from subcontracting out any of the "services" under the Agreement to a third party without Whole Foods' written or oral consent. [ECF No. 86-4 at 4]. In pertinent part, the indemnification clause provides that AA Cleaning agrees to defend and indemnify Whole Foods for any actions that arise out of AA Cleaning's "services" or "operations" under the Agreement. [ECF No. 86-4 at 2–3]. The terms "operations" and "services" are not defined in the Agreement. [ECF No. 86-4 at 2–3]. The "Purpose" section of the document, where such terms could have been defined, was also left blank. [ECF No. 86-4 at 1]. Whole Foods acknowledges that the Agreement was sent to AA Cleaning with the "Purpose" section left blank. [ECF No. 86-8 at 7]. Nonetheless, AA Cleaning never expressed confusion concerning the scope of its duties under the Agreement. [ECF No. 86-17 at ¶ 62].

Neither party disputes that Whole Foods was not notified of the Subcontract between AA Cleaning and ARD. [ECF No. 76-2 at 13–15; ECF No. 76-1 at 12]. AA Cleaning maintains that

such subcontracts are "industry standard" and should have been anticipated by Whole Foods. [ECF No. 76-2 at 11–12].  Whole Foods, meanwhile, claims that it first learned about the Subcontract through this litigation.  [ECF No. 76-1 at 12].

### B.    Procedural Background

Sampel filed her tort action against Whole Foods in Barnstable County Superior Court on August 3, 2018.  [ECF No. 1-1].  Whole Foods removed the case to federal court on August 17, 2018.  [ECF No. 1].  Thereafter, Sampel filed an amended complaint and added AA Cleaning as a defendant.  [ECF No. 20-1].  Whole Foods answered Sampel's second amended complaint and filed a crossclaim against AA Cleaning on December 26, 2018, which was amended on April 17, 2019 and answered by AA Cleaning on April 25, 2019.  [ECF Nos. 25, 39, 41].  On May 1, 2019, Sampel amended her complaint a third time to add ARD as a defendant.  [ECF No. 44].

AA Cleaning filed the instant motion for summary judgment as to Counts VI–XII of Sampel's third amended complaint, [ECF No. 44], on December 20, 2019, [ECF No. 79], which Sampel opposed, [ECF No. 85].

Whole Foods filed its motion for partial summary judgment as to Counts I, II, and V of the amended cross complaint, [ECF No. 39], on December 18, 2019, [ECF No. 76], and AA Cleaning opposed, [ECF No. 86].

## II.    LEGAL STANDARD

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if its resolution might affect the outcome of the case under the controlling law. . . .  A genuine issue exists as to such a fact if there is evidence from which a

reasonable trier could decide the fact either way." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trial worthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6. The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted."  Medina-Munoz, 896 F.2d at 8 (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

## III.    DISCUSSION

### A.    AA Cleaning's Motion for Summary Judgment

All of the claims in Sampel's complaint against AA Cleaning stem from an initial tort

claim of negligence.  [ECF No. 44 ¶¶ 20–23].[2]  To establish AA Cleaning's negligence, Sampel

"must establish the basic elements of duty, breach of duty, cause in fact and proximate cause."

Brettel v. Omron Scientific Technologies, Inc., 302 F. Supp. 3d 460, 465 (D. Mass 2018)

(citation omitted).  AA Cleaning argues that Sampel has failed to establish a negligence claim

because (1) AA Cleaning did not owe a duty of care to Sampel and (2) even if a duty of care was

owed, Sampel has not submitted evidence to establish that the duty was breached.  [ECF No. 80

at 1–2].

---

[2] The Court analyzes Sampel's tort action under the substantive law of Massachusetts, as the state where the injury occurred.  See Longtin v. Organon USA, Inc., 363 F. Supp. 186, 191 (D. Mass. 2018) ("Under Massachusetts choice-of-law rules, tort claims are governed by the law of the state in which the injury occurred . . . ." (citing Restatement (Second) Conflict of Laws § 145)).  Though Sampel's claim that AA Cleaning owed her a duty of care arises from its Agreement with Whole Foods—governed by Texas law—the contract's choice-of-law provision does not necessarily apply to the tort claim.  In Putnam Resources v. Pateman, the First Circuit reasoned that when there are "different issues in a single case, arising out of a common nucleus of operative facts . . . the substantive law of different states" may apply to each of the issues. 958 F.2d 448, 465 (1st Cir. 1992).  This framework is particularly common, the First Circuit noted, in the tort context.  Id.  Thus, the Court applies Texas law to the contract claims brought by Whole Foods, per the choice-of-law provision in the Agreement, and Massachusetts law to Sampel's tort claim because that is where her injury occurred.  C.f. Daynard v. MRRM, P.A., 335 F. Supp. 2d 156, 160, 163 (D. Mass. 2004) (applying the choice-of-law framework separately to a contract claim and a tort claim because the court recognized the same substantive state law would not necessarily apply to both).

1.    AA Cleaning Owed Sampel a Duty to Perform the Obligations Under the
Agreement with Whole Foods with Due Care

"The existence of a duty is a question of law, and is thus an appropriate subject of

summary judgment." Jupin v. Kask, 849 N.E.2d 829, 835 (Mass. 2006).  The Massachusetts

Supreme Judicial Court has held that, "a defendant under a contractual obligation 'is liable to

third persons not parties to the contract who are foreseeably exposed to danger and injured as a

result of its negligent failure to carry out that obligation.'"  Parent v. Stone & Webster Eng'g

Corp., 556 N.E.2d 1009, 1012 (Mass. 1990) (quoting Banaghan v. Dewey, 162 N.E.2d 807, 812

(Mass. 1959)).  Therefore, to sustain an action for negligence against AA Cleaning, Sampel must

establish that her injuries arose from AA Cleaning's failure to perform its contractual duties with

due care.  See, e.g., Creeden v. Sanieoff, 621 F. Supp. 2d 18, 21 (D. Mass 2009) (granting

defendant's motion for summary judgment where plaintiff's complaint alleged injuries resulting

from a duty outside of defendant's contractual obligations).   Based on the contract with Whole

Foods, AA Cleaning owed a duty to Sampel to carry out the contractual duties—providing

cleaning services for the Store—with reasonable care.  See Anderson v. Fox Hill Village

Homeowners Corp., 676 N.E.2d 821, 823 (Mass. 1997) ("[T]he contract created a relationship

between the defendant and third parties, by reason of which the law recognized a duty of

reasonable care in the performance of the obligation . . . .").

AA Cleaning argues that Sampel cannot establish a failure to perform the contractual

duties with care because the duties are not defined in the contract.  [ECF No. 80 at 6–7 ("The

contract does not specify that [AA Cleaning] must clean spills negligently caused by Whole

Foods practices . . . .   As such, Sampel has not presented any evidence from which a jury could

reasonably infer that [AA Cleaning] or ARD were responsible for the cleaning of this specific

spill which allegedly caused [Sampel's] injuries.")].  Vague or undefined contract language,

however, does not release AA Cleaning from a general duty to perform its contractual

obligations with care.  See, e.g., Davis v. Protection One Alarm Monitoring, Inc., 456 F. Supp.

2d 243, 251 (D. Mass 2006) (holding that an alarm company still owed a duty of care to a third-

party even though the underlying contract did not spell out the company's specific duties).

"[T]he scope of [a] defendant's duty to exercise due care cannot be limited merely to the precise

boundaries of its contract, but instead are defined by the scope of the undertaking it is

performing . . . ."  Id.  The duty of care in a tort action is therefore separate from a contractual

duty for a breach of contract action.[3]  "Were the rule otherwise, the ability of an injured party to

recover would rise or fall based on the exact language of the contract (or indeed whether the

parties had formed an enforceable contract at all) rather than whether the party performing the

undertaking had exercised due care."  Id.

      The legal principle behind a duty of care is that plaintiffs are owed and entitled to a

reasonable degree of protection.  See Brettel, 302 F. Supp. 3d at 467 ("The concept of 'duty' is

not sacrosanct in itself, but is only an expression of the sum total of considerations of policy

which lead the law to say that the plaintiff is entitled to protection." (quoting Jupin, 849 N.E.2d

at 835)).  In this case, keeping the floors clean of hazards at the Store was within the scope of

AA Cleaning's contract with Whole Foods to clean the Store.  Given that AA Cleaning was

under a contract with Whole Foods to provide cleaning services that could potentially affect

---

[3] As the court reasoned in Davis v. Protection One Alarm Monitoring, Inc., the focus of a tort claim is a plaintiff's basic right to recovery, not a defendant's particular contractual obligations, 456 F. Supp. 2d 243, 251 (D. Mass 2006), whereas in contract claims, the application and interpretation of specific terms is legally significant, and any ambiguities can be dispositive on a claim, see Local 369 Util. Workers v. NSTAR Elec. and Gas Corp., 317 F. Supp. 2d 69, 73 (D. Mass. 2004).  As a result, the undefined scope of AA Cleaning's duties under the Agreement does not affect its duty of care in the context of Sampel's negligence claim, but it does affect the analysis of Whole Foods' claims for indemnification and breach of contract, see Section III.B, infra.

Sampel as a visitor of the store, the Court finds that AA Cleaning owed Sampel at least a general duty of care.

> 2.      Sampel Has Not Established that AA Cleaning Breached Its Duty of Care

Sampel must next show that AA Cleaning breached its duty of care and that there was a "causal relation" between the breach and her injuries.  See Cracchiolo v. Eastern Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014).  Although AA Cleaning does not own the Store, this case is best understood under the doctrine of premises liability, which imposes on landowners a duty to ensure that their premises are free from defects and in a "reasonably safe condition." Mateo v. PGA Tour, No. 07-cv-11596, 2010 WL 745055, at *2 (D. Mass. Feb. 24, 2010).  This is analogous to AA Cleaning's contractual obligation to keep the Store clean and clear of hazards. "In cases involving premises liability, a plaintiff can establish a breach of the duty to maintain the premises by showing that there was a 'dangerous condition' which: (1) defendant (a) caused, (b) had actual knowledge of, or (c) reasonably should have been aware of; and (2) defendant did not correct." McDonough v. CBRE, Inc., No. 14-cv-13674, 2016 WL 2349102, at *2 (D. Mass. May 4, 2016) (citing Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012)).  The Court thus reviews the evidence submitted to determine whether AA Cleaning did, in fact, breach the duty of care in relation to the "dangerous condition" created by the puddle of water that allegedly caused Sampel to slip and fall.  [ECF No. 85-2 ¶ 2].

Reviewing the evidence in its totality, it is not clear how AA Cleaning either caused, knew about, or should have known about the puddle of water that allegedly caused Sampel to fall.  See generally [ECF No. 85-2].  First, the following facts are not in dispute: Whole Foods employees were the ones distributing the bags of ice; a Whole Foods employee, Grewel, attempted to clean up a spill caused by the ice before Sampel's fall; and, when Sampel fell, Grewel apologized to Sampel, stating that she "thought she got it all up."  [ECF No. 85-2 ¶ 18].

Second, according to the Store's regional manager, Sousa, if a Whole Foods employee is in the presence of a spill when it occurs, they are instructed to take the initiative and clean up the spill themselves.  [ECF No. 86-5 at 6–7].  Lastly, Sampel concedes that at no point after the incident did she witness or overhear Grewel alerting or notifying AA Cleaning of the spill.  [ECF No. 85-2 ¶¶ 24–25].  She therefore assumed that Grewel was responsible for cleaning up the spill.  [Id.].

Moreover, the record has established that AA Cleaning was only responsible for cleaning spills if the cleaners noticed them during routine hourly sweeps of the store or if they were notified of a spill by a Whole Foods employee.  [Id. ¶¶ 30, 33].  Sampel has not submitted any evidence that AA Cleaning knew of the spill either before or after Sampel's accident.  [Id. ¶ 29].  Further, because Grewel was already taking responsibility for the spill and cleaning it up immediately before Sampel's fall, it appears that there was insufficient time for AA Cleaning to have intervened even if it was its duty to do so.  See Sheehan v. Roche Bros. Supermarkets, Inc., 863 N.E.2d 1276, 1281 (Mass. 2007) ("[P]remises liability attaches only if a [defendant] has actual or constructive notice of the existence of the dangerous condition, sufficient to allow time for [defendant] to remedy the condition.").

In sum, the evidence submitted is insufficient to establish that AA Cleaning breached its duty of care to Sampel.  As such, Sampel's negligence claim against AA Cleaning fails because the second element, which requires the breach of a legal duty, has not been met.  Therefore, AA Cleaning's motion for summary judgment, [ECF No. 79], is GRANTED.

### B.    Whole Foods' Motion for Partial Summary Judgment

Although the Court has dismissed Sampel's claims against AA Cleaning, AA Cleaning is still a party to this case as a defendant-in-crossclaim based on Whole Foods' cross claims against

it.  The Court thus addresses Whole Foods' motion for summary judgment on Counts I, II, and V

of its cross complaint, [ECF No. 39], against AA Cleaning.

As a preliminary matter, all claims between Whole Foods and AA Cleaning will be

assessed under Texas state law in accordance with the Agreement's choice-of-law provision.

See [ECF No. 86-4 at 4 ("This Agreement shall be governed by, and construed under, the laws of

the State of Texas, without giving effect to the principles of conflicts of law thereof.")]; see also

Morris v. Watsco, Inc., 433 N.E.2d 886, 888 (Mass. 1982) ("Massachusetts law has recognized,

within reason, the right of the parties to a transaction to select the law governing their

relationship.").  The Court finds no reason to supersede the choice-of-law clause in the

Agreement.

### 1. Whole Foods' Request for Declaratory Judgment

Whole Foods first seeks a declaratory judgment that AA Cleaning "is obligated to defend,

indemnify and hold harmless Whole Foods with respect to all damages, losses and liabilities,

including all interest, costs and attorneys' fees, that it incurs as a result of [Sampel's] allegations

in the Complaint."  [ECF No. 39 ¶ 22].  In Texas, parties may secure a declaratory judgment on a

duty to indemnify before the underlying tort claim has been resolved.  See Farmers Tex. Cty.

Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 83 (Tex. 1997).

Courts will grant a request for a declaratory judgment if the pleadings sufficiently

establish that the indemnity requirement was triggered according to the "precise language in the

contract and the factual allegations in the pleadings."  English v. BGP Intern., Inc., 174 S.W.3d

366, 372, 375–76 (Tex. Ct. App. 2005) (granting a request for declaratory judgment by the

plaintiff, because the pleadings sufficiently pled facts invoking defendant's duty to defend).[4]

The interpretation of an indemnity clause falls "under the normal rules of contract construction."

Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998).

Accordingly, the Court begins with the operative language of the Agreement. Coastal Mart, Inc.

v. Sw. Bell Tel. Co., 154 S.W.3d 839, 843 (Tex. Ct. App. 2005).

> The Agreement provides:
>
> [AA Cleaning], its respective successors and assigns, do hereby agree to protect, defend and indemnify [Whole Foods] . . . , and forever hold . . . harmless, from and against all . . . , actions and causes of action, . . . arising, directly or indirectly, out of or in connection with the operations of [AA Cleaning] or any of the services provided, or to be provided, by the [AA Cleaning] under this Agreement . . . .

[ECF No. 86-4 at 3]. The Agreement clearly limits AA Cleaning's duties to defend and

indemnify to events "arising . . . out of" its "operations" and "services." [Id.]. Texas courts

interpret the phrase "arising . . . out of" as requiring a causal relationship between the actions of

the indemnitor and the loss for which indemnity is sought. Crimson Exploration, Inc. v.

Intermarket Mgmt., LLC, 341 S.W.3d 432, 443 (Tx. Ct. App. 2010) ("[T]he term 'arising out of'

'means that there is simply a causal connection or relation,' or 'but for causation,' rather than

either direct or proximate causation." (quoting Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,

141 S.W.3d 198, 203 (Tex. 2004))). The standard is broad. Coastal Mart, Inc., 154 S.W.3d at

845 ("[A]rising out of are words of much broader significance than caused by . . . . connot[ing]

an even more general nexus." (internal quotation marks and citation omitted)). Therefore, to

establish that AA Cleaning has a duty to indemnify, the pleadings must show a causal connection

---

[4] The Court recognizes that the duty to defend and duty to indemnify are distinct and separate obligations. D.R. Horton-Texas, Ltd. v. Markel Intern. Ins. Co., Ltd., 300 S.W.3d 740, 743 (Tex. 2009) (citing Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004)). In the present case, however, the issue is whether the provision, which clearly describes both a duty to defend and to indemnify, was triggered at all.

between the events that gave rise to Sampel's claim, [ECF No. 44], and AA Cleaning's "operations" and "services" under the Agreement.

The parties dispute the scope of AA Cleaning's "operations" and "services" under the Agreement.  [ECF No. 86 at 10].  AA Cleaning claims that the precise terms of their "operations" and "services" were never defined, [ECF No. 86 at 8], while Whole Foods maintains that there was never any confusion amongst the parties that it was AA Cleaning's responsibility to "inspect the retail floor . . . for hazardous substances and keep that area in a safe condition for customers."  [ECF No. 77 at 13].  Whole Foods does not, however, dispute the fact that the "Purpose" section of the Agreement was left blank and that the terms "operations" and "services" were left undefined.  [ECF No. 76-1 at 18–19].  AA Cleaning argues that the blank "Purpose" section and undefined terms constitute an ambiguity in the contract which precludes summary judgment.  [ECF No. 86 at 9].

Whether a contract is ambiguous is a question of law.  ConocoPhillips Co. v. Koopmann, 547 S.W.3d 858, 874 (Tex. 2018).  "An ambiguity does not arise merely because the parties advance conflicting contract interpretations."  Cent. Mut. Ins. Co. v. KPE Firstplace Land, LLC, 271 S.W.3d 454, 459 (Tex. Ct. App. 2008) (citing Kelley–Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 465 (Tex. 1998)).  "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation."  ConocoPhillips, 547 S.W.3d at 874 (citing Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996)).  "Ambiguity in contract language," however, "is not to be confused with silence."  Providence Land Servs., LLC v. Jones, 353 S.W.3d 538, 543 (Tex. Ct. App. 2011).  It is important to distinguish contract ambiguity from contract silence because "[t]he ramifications of silence in a contract . . . are different."  Hewlett-Packard Co. v. Benchmark Elecs., Inc., 142 S.W.3d 554,

561 (Tex. Ct. App. 2004).  "When a contract is silent, the question is not one of interpreting the language but rather one of determining its effect."  Id.

Although AA Cleaning claims that the Agreement terms are ambiguous, the actual issue is the fact that the contract is silent regarding the "purpose" of the contract and leaves certain terms undefined.  [ECF No. 86 at 8].  Any uncertainty around AA Cleaning's obligations at the Store is because the "Purpose" section of the Agreement was left blank.  [ECF No. 86-4 at 1].  See, e.g., Lidawi v. Progressive Cty. Mut. Ins. Co., 112 S.W. 3d 725, 731 (Tex. Ct. App. 2003) (finding that a claim for contract ambiguity was actually an issue of contract silence because an insurance policy failed to define the specific terms for conducting examinations under oath). This silence as to the "purpose" of the contract has created a "latent ambiguity" around the scope of AA Cleaning's contractual duties.  Hewlett-Packard, 142 S.W.3d at 561 ("[S]ilence may create a latent ambiguity.").

"A latent ambiguity exists when the contract appears to convey a sensible meaning on its face, but it cannot be carried out without further clarification."  Ludwig v. Encore Med., L.P., 191 S.W.3d 285, 290 (Tex. Ct. App. 2006) (citing Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Inds. Inc., 907 S.W.2d 517, 520 (Tex. 1995)).  See generally URI, Inc. v. Kleberg Cty., 543 S.W.3d 755, 765 (Tex. 2018) ("A classic example of a latent ambiguity is when a contract requires goods to be delivered to 'the green house on Pecan Street,' but there were, in fact, two green houses on Pecan Street.").  The Agreement's blank "Purpose" section constitutes a latent ambiguity where the terms "operations" and "services" only became unclear or ambiguous when applied to the context of Sampel's claim.  See, e.g., RPC, Inc. v. CTMI, LLC, No. 02-19-00195-CV, 2020 WL 3456126, at *19 (Tex. Ct. App. June 25, 2020) (concluding that a consulting agreement contained a latent ambiguity because when specific terms were applied to the subject

matter of the case, "differing but reasonable interpretations became apparent"). Before Sampel's claim, neither party challenged the blank "Purpose" section or expressed confusion over what tasks AA Cleaning was expected to complete at the Store.  [ECF No. 86-17 ¶¶ 62, 65, 67, 68]. After Sampel's claim, the meaning of the terms "operations" and "services" became important to determine whether the duty to indemnify was triggered and the parties evidenced conflicting understandings of the terms.  [ECF No. 77 at 14; ECF No. 86 at 8].  Under Texas law, if a latent ambiguity arises, the ambiguity "must be determined by the trier of fact and summary judgment is inappropriate." Hewlett-Packard, 142 S.W.3d at 562; see also Donahue v. Bowles, Troy, Donahue, Jonson, Inc., 949 S.W.2d 746, 753 (Tex. Ct. App. 1997) ("[A] latent ambiguity . . . must be determined by the trier of fact.").

The Court may, however, consider extrinsic evidence of the contract's surrounding circumstances to resolve the ambiguity.[5]  URI, Inc., 543 S.W.3d at 765–66 ("When surrounding circumstances reveal an ambiguity about the intent embodied in the contract's language . . . extrinsic evidence of the parties' true intent will then—and only then—be admissible to settle the matter.").  "If, in the light of surrounding circumstances, the language of the contract appears to be capable of only a single meaning, the court can then confine itself to the writing." Sun Oil Co. (Del.) v. Madeley, 626 S.W.2d 726, 731 (Tex. 1981).  "On the other hand, if the contract is

---

[5] In Lidawi v. Progressive County Mutual Insurance Co., the court stated that "[w]hen a contract is silent on an issue, Texas courts will infer reasonable terms."  112 S.W.3d 725, 731 (Tex. Ct. App. 2003).  The Western District of Texas, however, later clarified that courts should not use this power to "insert language or provisions the parties did not use or otherwise rewrite private agreements." Arnold v. HomeAway, Inc., No. 16—cv-00374, 2017 WL 7789268, at *5 (W.D. Tex. Aug. 1, 2017) (distinguishing the case from Lidawi, where the court's inference of reasonable terms was permissible because "the court did not create a new contractual right or obligation").  In the present case, for example, it would be improper for the Court to infer that "operations" and "services" included floor cleaning because this would impose a new obligation on AA Cleaning not contained in the original contract.

subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." Cmty. Health Sys. Prof'l Servs. Co. v. Hansen, 525 S.W.3d 671, 681 (Tex. 2017).  The Court will therefore consider parol evidence to determine whether the Agreement's surrounding circumstances permit only one reasonable meaning as to the scope of AA Cleaning's services. If, after reviewing the evidence, there is still more than one reasonable interpretation of what AA Cleaning's services included, then the ambiguity will remain and summary judgment will be inappropriate.

First, depositions from Whole Foods and AA Cleaning contain equally reasonable, but contradictory, statements about the services AA Cleaning was contracted to perform at the Store. [ECF No. 76-1; ECF No. 86-2].  Sullivan, the Whole Foods Regional Manager, testified that it was "ridiculous" for AA Cleaning to claim that it did not know floor cleaning was part of the Agreement because the company was already working with other Whole Foods locations, and therefore knew what work was expected.  [ECF No. 76-1 at 19, 22].  Robert Allen, Director of Operations at AA Cleaning, however, testified in his deposition that Whole Foods assigns tasks on a "store by store" basis.[6]  [ECF No. 86-2 at 2].  As such, Allen explained, it was entirely reasonable for AA Cleaning to be uncertain of what services were expected at this particular store without those services being specified in the Agreement.  [Id.].

Second, a chain of emails sent between the manager of the Store, AA Cleaning, and ARD shows that AA Cleaning was privy to some of the services performed by ARD, although floor

---

[6] Robert Allen, Director of Operations at AA Cleaning, was designated to testify on behalf of AA Cleaning.  [ECF No. 76-2 at 3–4].

cleaning around the registers was never explicitly mentioned.[7]  See generally [ECF No. 86-15].

The emails, which explicitly mention window washing, power washing the sidewalk, and sealing

the floor, do not include any direct references to floor cleaning, which supports the argument that

AA Cleaning could reasonably have believed that floor cleaning was not part of the Agreement.

    Finally, Whole Foods cites the use of the "Gleason Logs," the electronic cleaning check

system, as evidence that AA Cleaning must have known that floor cleaning was part of its duties.

[ECF No. 77 at 9].  The system required cleaning employees to perform hourly sweeps of the

store and mark designated areas as "clean and hazard free."  [Id.]; see generally [ECF No. 76-8].

AA Cleaning, however, denies knowing anything about the Gleason Logs, [ECF No. 76-2 at 45–

46], and maintains that, if ARD employees were instructed to use the Gleason Logs or clean

spills, those instructions would have been purely between ARD and Whole Foods, [id.].

Meanwhile, Whole Foods reasonably believed that AA Cleaning would have been aware of the

Gleason Logs because the ARD workers at the Store always wore AA Cleaning uniforms.  [ECF

No. 76-7 at 4].  Therefore, there was no reason for Whole Foods to have suspected that the

people cleaning the store were actually employees of ARD, and not AA Cleaning.  [Id.].

    Because both parties have reasonable interpretations of the ambiguous terms, there is a

genuine dispute of material fact making summary judgment inappropriate.  Mfg. Mgmt. Sys.,

Inc. v. Camshaft Mach. Co., No. 96-21043, 1997 WL 574867, at *2 (5th Cir. Aug. 25, 1997)

("The primary question for review of a summary judgment on a contract claim is whether the

contract's terms are unambiguous; we can determine whether a party is entitled to summary

---

[7] The emails from ARD came from Alexandre De Sousa's personal Gmail account, not an ARD
branded email account.  See generally [ECF No. 86-15].  Therefore, it is conceivable that the
email exchanges would not have alerted Whole Foods to the existence of ARD or the
subcontract.

judgment only if they are." (citation omitted)).  Without knowing the scope of these services, the Court cannot determine whether there is a causal connection between AA Cleaning's role at the Store and Sampel's claim, which would trigger AA Cleaning's duty to defend and indemnify Whole Foods.  The motion for summary judgment as to Count I of the cross complaint is therefore denied.

2.     <u>AA Cleaning's Claim That the Indemnity Clause of the Agreement Fails the Express Negligence Test</u>

Whole Foods argues that the terms of the Agreement's indemnity provision obligate AA Cleaning to defend and indemnify Whole Food for the claim brought by Sampel.  [ECF No. 77 at 13].  Even if Sampel's injury arose solely from Whole Foods' own negligence, Whole Foods claims that AA Cleaning would still have a duty to defend and indemnify.  [<u>Id.</u> at 14].  AA Cleaning responds that the indemnity provision in the Agreement does not comply with Texas law, and is therefore null.  [ECF No. 86 at 6].

Although the Court cannot determine whether the provision has been triggered because of the underlying material factual dispute discussed Section III.B.1, <u>supra</u>, the Court will still address AA Cleaning's challenge to the indemnity provision.  [ECF No. 86 at 6].  If the material factual dispute is ultimately settled in Whole Foods' favor, then the indemnity provision will be triggered and the parties will need to know whether the provision is, in fact, valid.  <u>See</u> <u>English</u>, 174 S.W.3d at 374 (noting that if the indemnification clause at issue was invalid, the defendant's duty to indemnify would be void).

"Because indemnification of a party for its own negligence is an extraordinary shifting of risk," Texas state law has a strict standard for indemnity clauses.  <u>Dresser Indus., Inc. v. Page Petroleum, Inc.</u>, 853 S.W.2d 505, 508 (Tex. 1993).  As such, "[the Supreme Court of Texas] has developed fair notice requirements," which include "the express negligence doctrine and the

conspicuousness requirement." Id. The express negligence doctrine states that "parties seeking to indemnify one party from the consequences of its own negligence must express that intent in specific terms, within the four corners of the document." Quorum Health Res., LLC v. Maverick Cty Hosp. Dist., 308 F.3d 451, 458 (5th Cir. 2002) (citing Ethyl Corp. v. Daniel Const. Co., 725 S.W.2d 705, 707–08 (Tex. 1987)). The conspicuousness requirement provides that terms of indemnification "must appear in the face of the [contract] to attract the attention of a reasonable person when he looks at it." Williams v. Home Depot USA, Inc., No. H–10–2493, 2013 WL 5281729, at *13 (S.D. Tex. 2013) (citing Dresser Indus., 853 S.W.2d at 508). The Court finds that the indemnification terms in the Agreement, [ECF No. 86-4 at 2–3], satisfy both fair notice requirements.

When reviewing an indemnification clause, the Court must pay close attention to whether the provision's language is sufficient to alert the indemnitor that they are assuming full liability for the indemnitee's actions, even when the indemnitee is solely negligent. See Acuity v. Kessor Enters., Ltd., 751 F. App'x 924, 927 (7th Cir. 2018) (finding that a contract bound by Texas state law that did not contain an "explicit assumption of liability for a third-party's negligence" failed the express negligence test); Travelers Lloyds Ins. Co. v. Pac. Emps. Ins. Co., 602 F.3d 677, 682 (5th Cir. 2010) ("Indemnity agreements must . . . ensure that the intent of the parties is clear and that the risk-shifting provisions are conspicuous."). Here, the language concerning indemnity in the Agreement was sufficient to alert AA Cleaning that it was agreeing to indemnify Whole Foods for its own negligence. [ECF No. 86-4 at 2–3]. The Agreement states, "[AA Cleaning] . . . agree[s] to protect, defend, and indemnify [Whole Foods] . . . from and against all liabilities . . . including claims and/or allegations arising from [Whole Foods'] own negligence . . .

regardless of the negligence of Whole Foods."  [Id. (emphasis omitted)].  This language is unambiguous and sufficient to satisfy the express negligence doctrine.

Moreover, the indemnity clause was sufficiently conspicuous.  The Agreement specifically states, "***THE FOLLOWING PROVISION CONTAINS AN EXPRESS NEGLIGENCE CLAUSE.***"  [ECF No. 86-4 at 3 (emphasis in the original)].  The clarity of this wording and its formatting in bold, italicized, and underlined typeface satisfies the conspicuousness requirement.  See Lopez v. Garbage Man, Inc., No. 12–08–00384–CV, 2011 WL 1259523, at *14 (Tex. Ct. App. Mar. 31, 2011) (holding that a contract using bold and underlined typeface was sufficient to notify a reasonable person to its terms).

AA Cleaning contends that, as a routine practice, Texas courts will reject any indemnity clause containing the phrase "arising out of" because this language fails the express negligence test.  [ECF No. 86 at 6].  This is a misreading of the doctrine.  The goal of the express negligence doctrine is to discourage "broad statements of indemnity" where "the intent to indemnify a party for its own negligence can be gleaned from a contract only by implication or deduction." Safeway, Inc. v. PDX, Inc., 676 F. App'x 229, 233 (5th Cir. 2017).  Thus, the dispositive feature in an indemnity provision for the express negligence test is not whether it uses the words "arising out of," but whether the language sufficiently defines the parties' intent.  Compare Oliver Comm'cns Grp., Inc. v. Schneider Elec. Bldgs. Americas, Inc., No. 07-17-00396-CV, 2018 WL 5782889, at *6, *8 (Tex. Ct. App. Nov. 2, 2018) (finding that an indemnity provision containing the words "arising out of" failed the express negligence test because it did not sufficiently state the parties' intent to impose a duty to indemnify on the plaintiff for defendant's sole liability), with Atl. Richfield Co. v. Petroleum Pers., Inc., 768 S.W.2d 724, 725 (Tex. 1989) (upholding an indemnity clause with the "arising out of" phrase because the terms sufficiently defined the

parties' intent).  Texas precedent demonstrates that an indemnity clause containing the words

"arising out of" may comply with the express negligence doctrine as long as the language clearly

states the parties' intent to exculpate the indemnitee for the indemnitee's own negligence.

The present Agreement clearly states that AA Cleaning agreed to indemnify Whole

Foods for "claims and/or allegations arising from [Whole Foods'] own negligence."  [ECF No.

86-4 at 3].  Therefore, the mere fact that the Agreement contains the phrase "arising out of" is

not determinative.  The plain language of the agreement clearly expresses the parties' intent for

Whole Foods to be indemnified, even for claims arising from their "own negligence," and

therefore the express negligence doctrine is satisfied.  [ECF No. 86-4 at 3].

Even though the duty to indemnify has not yet been triggered by the provision, the Court

notes, for purposes of future motions in this case, that the language of the indemnity clause in the

Agreement is valid under Texas state law, as the terms are both express and conspicuous.  The

motion for partial summary judgment is therefore denied as to Count II of the cross complaint.

3.     Whole Foods' Claim for Breach of Contract

Lastly, Whole Foods contends that AA Cleaning breached section 7(e) of the Agreement

by subcontracting cleaning services to a third party, ARD.  [ECF No. 77 at 18].  Section 7(e)

provides that

> [n]either this Agreement nor any of the services to be provided by [AA Cleaning]
> to [Whole foods] hereunder, may be assigned or delegated, in whole or in part, by
> . . . [AA Cleaning] to any third party, person or entity, without the prior written
> consent of Whole Foods, which consent shall not be unreasonably withheld.

[ECF 86-4 at 4].  Whole Foods further claims that as a result of subcontracting to ARD, AA

Cleaning's breach resulted in the injury suffered by Sampel.  [ECF No. 77 at 19].  To establish a

breach of contract claim under Texas law, plaintiffs must show "(1) the existence of a valid

contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by

the defendant; and (4) damages sustained as a result of the breach." Perkins v. Bank of Am., 602 F. App'x 178, 180 (5th Cir. 2015). AA Cleaning contests whether Whole Foods has established the third and fourth elements. [ECF No. 86 at 13–15].

AA Cleaning argues that because its subcontract with ARD took place before the Agreement with Whole Foods was executed, the subcontracting did not breach the Agreement. [ECF No. 86 at 13]. While it is true that the subcontract is dated January 18, 2015 and the Agreement is dated April 1, 2015, AA cleaning may still have breached the Agreement by continuing to subcontract with ARD after agreeing that it would not do so in Section 7(e). [ECF Nos. 76-4, 76-5]. Further, AA Cleaning has not submitted any evidence that contradicts Whole Foods' assertion that it was never notified about the subcontract with ARD. [ECF No. 76-2 at 13–15]. Moreover, Alexandre Ramos De Sousa, owner of ARD, confirmed that all ARD employees wore uniforms with an "AA Cleaning" insignia, giving no visible indication to Whole Foods that the workers in the Store were not AA Cleaning employees. [ECF No. 76-7 at 4]. AA Cleaning claims that because subcontracting is an "industry standard," [ECF No. 76-2 at 11–12], Whole Foods should have known that AA cleaning would use a subcontractor. Where the language of the contract so explicitly forbids the use of subcontractors without notice, AA Cleaning should have understood that Whole Foods did not subscribe to such an "industry standard," even assuming that such a standard existed. [ECF No. 86-4 at 4]. Therefore, AA Cleaning breached Section 7(e) by continuing to subcontract with ARD after signing the Agreement in April of 2015 without notifying Whole Foods about the subcontract. See generally [ECF Nos. 77, 86].

Even if AA Cleaning breached the Agreement, Whole Foods must still establish that it suffered damages as a result of AA Cleaning's breach. See Miner Dederick Const., LLP v. Gulf

Chem. & Metallurgical Corp., 403 S.W.3d 451, 463 (Tex. Ct. App. 2013) ("Damages are an essential element of a breach of contract claim.").  Further, "plaintiff must adduce substantial, competent evidence of a character that can permit reasonable [people] to determine that damage was caused by the breach [of contract]."  Palla v. Bio-One, Inc., 424 S.W.3d 722, 726 (Tex. Ct. App. 2014) (quoting Univ. Computing Co. v. Mgmt. Sci. Am., 810 F.2d 1395, 1398 (5th Cir. 1987)).  As the Court stated in Section III.A., supra, however, whether the services contracted for in the Agreement, regardless if performed by AA Cleaning or ARD, bore any connection to Sampel's claim requires further factual development.  Therefore, the Court cannot decide the breach of contract question at summary judgment when there are genuine disputes of material fact substantially intertwined with the claim.  The motion for partial summary judgment is therefore denied as to Count V of the cross complaint.

## IV.     CONCLUSION

Accordingly, AA Cleaning and ARD's motion for summary judgment on Counts VI–XII of Sampel's third amended complaint, [ECF No. 79], is GRANTED and Whole Foods' motion for partial summary judgment on Counts I, II, and V of the cross claim, [ECF No. 76], is DENIED.

**SO ORDERED.**

August 27, 2020                                         /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE